**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

BILL D. VESS                                                                                      PLAINTIFF

V.                                                                          NO. 1:16-CV-80-DMB-RP

MTD CONSUMER GROUP, INC.                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This employment discrimination action is before the Court on MTD Consumer Group, Inc.'s motion for summary judgment. Doc. #59.

## I
## Procedural History

On May 11, 2016, Bill D. Vess filed a complaint against MTD Consumer Group, Inc. ("MTD Consumer"), alleging that he was retaliated against for taking leave under the Family Medical Leave Act ("FMLA"), and discriminated against based on his disability, age, race, and sex. Doc. #1 at ¶ 10. On July 27, 2016, MTD Consumer answered the complaint. Doc. #5. Following a period of discovery, on May 12, 2017, MTD Consumer filed a motion for summary judgment with a separate memorandum brief. Doc. #59; Doc. #60. Vess responded in opposition on May 26, 2017. Doc. #61; Doc. #62. On June 2, 2017, MTD Consumer replied. Doc. #64.

## II
## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party and material if its resolution could affect the outcome of

the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## III
## Factual Background

### A. Vess' Employment with MTD Consumer

Around the year 2000, Bill Vess, a Caucasian male, began working at MTD Consumer's Verona, Mississippi, location as a temporary press operator. Doc. #59-2 at Ex. B at ¶ 4; Doc. #62-1 at 21, 35–36. After approximately six months, MTD Consumer laid off Vess as part of a seasonal shutdown. Doc. #62-1 at 36.

In September of 2001, Vess returned to MTD Consumer as a full-time press operator. *Id.* Approximately two months later, MTD Consumer transferred Vess from the press shop to the weld

shop to work as a robotics operator.  *Id*. at 50, 56.

On March 7, 2002, Vess signed a form acknowledging receipt of a copy of the MTD Tupelo Division Employee Handbook and agreeing to "comply with the provisions in [the] Handbook and any revisions made to it."  Doc. #59-2 at Ex. B at ¶ 8; *id*. at Ex. B-2.  The Handbook contains an "Employee Non-Harassment Policy," of which its "Policy Statement" provides:

> The Company is committed to providing a work environment that is free of discrimination and unlawful harassment. Actions, words, jokes or comments based on an individual's race, color, gender, national origin, religion, age or disability or that of his/her relatives, friends or associates:
>
> 1. Which has the purpose or effect of creating an intimidating, hostile or offensive work environment;
> 2. Has the purpose or effect of unreasonably interfering with an individual's work performance; or
> 3. Otherwise adversely affects an individual's employment opportunities will not be tolerated by the Company.
>
> Harassment in any form, including sexual, verbal, physical or visual is prohibited.

Doc. #59-2 at Ex. B-1 at 42–43.

The next year, Vess became a robotics technician.  Doc. #62-1 at 56.  Around 2007, Vess became a lead person in the welding department.  *Id*. at 56–57; Doc. #59-2 at Ex. B at ¶ 4.  As a lead person, Vess supervised other employees and assisted them in reaching their goals.  Doc. #62-1 at 57; Doc. #59-2 at Ex. B at ¶ 9.  Vess remained a lead person in the welding department until his termination in May 2015.  Doc. #59-2 at Ex. B at ¶ 4.

### B.  Disciplinary Warnings

On July 24, 2013, Vess received a verbal warning for not wearing required ear plugs.  Doc. #59-2 at Ex. B at ¶ 10; *id.* at Ex. B-1 at 39; Doc. #62-1 at 82; Doc. #62-3.  On November 5, 2013, Vess received a final disciplinary notice for walking off the job and threatening to quit when told that he would have to wear a welding jacket at all times.  Doc. #59-2 at Ex. B at ¶ 11; Doc. #62-1

at 83–84; Doc. #62-4.

### C. Vess' Complaints of Sexual and Racial Harassment by Caron Ewing

During Vess' employment, Caron Ewing, an African-American female employee, allegedly engaged in sexual and racial harassment of Vess.

#### 1. Sexual harassment

According to Vess, Ewing sexually harassed him continuously by inappropriately grabbing his butt checks and his "front." Doc. #62-1 at 71. In August 2012, Vess complained to Murry Blankenship, a manager, about Ewing's behavior and told him that it made him feel uncomfortable and incapable of performing his job. *Id*. at 72; Doc. #62-13. According to Blankenship, Vess informed him that he brought Ewing's behavior to the attention of previous supervisors—Walter Rock, Hunt Kirk, and Larry Tramel—and that they spoke with her about his complaint. Doc. #62-13. Blankenship testified that although Vess did not want him to, he reported Vess' complaint to William Talbert Cherry, the Human Resources Manager, who issued Ewing a verbal warning that "if she continues … further disciplinary action [would] be administered." *Id*.; Doc. #62-14; Doc. #59-9 at 8–10. Vess testified that after the verbal warning, Ewing ceased the inappropriate grabbing. Doc. #62-1 at 73; Doc. #59-2 at Ex. B at ¶ 12.

#### 2. Racial harassment

Around January 2015, Vess requested and received leave under the FMLA because of anxiety and a scheduled surgery for his deviated septum.[1] Doc. # 62-1 at 30, 94–95; Doc. #59-2 at Ex. B at ¶ 13. Approximately two weeks before he left work on medical leave, Vess and an African-American male employee, who goes by the nickname Blaq, had an altercation about a machine. Doc. #62-1 at 90–91, 93. While Vess and Blaq were arguing, Ewing stood in the

---

[1] Vess did not have the surgery. *See* Doc. #62-1 at 30.

background instigating the argument. *Id.* at 91. Vess recalls Ewing saying, "he ain't no man. He's a white man. They ain't never made a good white man …." *Id.* Vess reported this incident to a member of management, David Hancock, who said it was considered a racial slur, but Vess never heard anything else about the situation. *Id.* at 89–90.

### D. Investigation of Racial Slurs

On April 9, 2015, while Vess was on medical leave, David Hamblin, a 43-year-old Caucasian male electrical technician, made a formal complaint to Cherry about Vess, who was 59 years old at the time; Walter Rock, a 59-year-old Caucasian male weld shop supervisor; and Jamey Holland, a 43-year-old Caucasian male maintenance employee. Doc. #59-2 at Ex. B at ¶ 14; Doc. #62-11 at 4. Hamblin complained that Rock, Holland, and Vess frequently used racial slurs, including the "N-word," when referring to employees. Doc. #59-2 at Ex. B at ¶ 14; *id.* at Exs. B-7, B-8; Doc. #59-4 at 5–9. According to Hamblin, he asked them to stop using the word but they continued. Doc. #59-4 at 6. Hamblin asserted that Rock used the "N-word" approximately three to six times, including once calling a group of employees "a bunch of lazy [N-words]." Doc. #59-2 at Exs. B-7, B-8; Doc. #59-4 at 7. Hamblin reported that he heard Vess use the "N-word" a few times when referring to African-American employees shortly before he left on leave but could not recall the exact statements. Doc. #59-2 at Ex. B-7; Doc. #62-11 at 8–11. Finally, Hamblin reported that he heard Holland use the phrase "'N-word' please" in "casual conversation" on two occasions. Doc. #59-2 at Ex. B at ¶ 15; *id.* at Ex. B-7; Doc. #62-11 at 11–12.

Cherry began an investigation of Hamblin's complaint. Doc. #59-2 at Ex. B at ¶ 16. As part of the investigation, Cherry spoke with Rock, Holland, and Billy Coker, a 53-year-old Caucasian male employee who Hamblin reported witnessed the most recent use of the "N-word." *Id.*; Doc. #59-2 at Ex. B-7. When questioned by Cherry, Coker admitted to hearing Rock, Vess,

and Holland use the "N-word" on occasions. Doc. #59-2 at Ex. B at ¶ 16; *id*. at Ex. B-8; Doc. #62-10 at 8–9, 18–20. Holland admitted to using the statement "'N-word' please" as slang and expressed remorse about it. Doc. #59-2 at Ex. B at ¶ 16; *id*. at Ex. B-8; Doc. #62-12 at 8. Rock initially denied using the "N-word" but eventually admitted to using it on a few occasions while in the office. Doc. #59-2 at Ex. B at ¶ 16; *id*. at Ex. B-8; Doc. #62-8 at 11–12.

After speaking with Rock, Holland, and Coker, Cherry consulted with the plant's general manager, Barry Smith, a 55-year-old Caucasian male, and MTD Consumer's corporate HR department. Doc. #59-2 at Ex. B at ¶ 17. They agreed that the use of racial slurs by supervisors would not be tolerated and that Rock should be terminated. *Id*. Cherry, Smith, and MTD's corporate HR department also agreed that Holland should be terminated. *Id*. However, Cherry, Smith, and MTD's corporate HR department waited for Vess to return from leave before making a final decision regarding his employment. *Id*.

On April 30, 2015, Vess returned to work and spoke with Cherry about the allegations. *Id*. at ¶ 21. Vess requested that Cherry and Jessica Baker,[2] the Employee Relations Supervisor, continue the investigation and ask other employees if they had ever heard him use the "N-word." *Id*. at ¶ 21. As part of the continued investigation, Cherry spoke with Coker; Tommy White, a 55-year-old African-American male; and Hamblin about their knowledge of Vess' alleged use of the "N-word." *Id*. at ¶¶ 22–25. When Cherry told Coker that Vess denied using the "N-Word," Coker shook his head and said, "he's not telling the truth." *Id.* at ¶ 22. White informed Cherry that he heard Vess use the "N-Word" on more than one occasion. *Id.* at ¶ 23. Hamblin told Cherry that he knew Vess would deny using the "N-Word" and that he specifically recalled Vess using it right before he went on FMLA leave. *Id.* at ¶ 24. Baker also followed up with Coker, White, and

---

[2] Jessica Baker is a 33-year-old African-American female. Doc. #59-2 at Ex. B at ¶ 21.

Hamblin to confirm that Cherry had accurate notes of what the witnesses stated. *Id*. at ¶ 25. At

the close of the investigation, and after consulting with Smith again, Cherry terminated Vess on

May 4, 2015. *Id*. at ¶ 26. At that time, Cherry informed Vess that he could appeal through MTD

Consumer's Employee Peer Review Board ("EPRB"). *Id*. at ¶ 27.

### E.  Employee Peer Review Board

MTD Consumer's Employee Peer Review Board

> is a voluntary problem resolution program available at participating sites to hourly
> MTD employees who have completed their probationary period. The program
> offers employees the opportunity to present employment related cases to a group of
> peers for evaluation. After carefully considering the facts of a case, an EPRB panel
> decides whether to uphold or to overturn the original company action in a case.

Doc. #62-28 at 3. Because Vess and Holland were hourly employees, they were eligible to appeal

their terminations.[3] *Id*. at 16; Doc. #59-2 at Ex. B at ¶ 18.

Each EPRB panel consists of five panelists—four hourly employees and one management

representative. Doc. #62-28 at 4. The members of each EPRB panel are chosen by the employee

requesting the hearing randomly drawing eight employees—the first four employees drawn serve

on the panel and the remaining four serve as alternates. *Id*. The employee then draws four

management personnel—the first one drawn serves on the panel and the remaining three serve as

alternates. *Id*. During the hearing, the employee may present company statements and witnesses.

*Id*. After hearing the evidence, the EPRB deliberates and votes by secret ballot. *Id*. The EPRB

can either overturn or uphold the original company action. *Id*.

On April 14, 2015, the EPRB heard Holland's appeal and unanimously voted by secret

ballot to overturn the termination. Doc. #59-2 at Ex. B-9. Holland served a three-day suspension

and returned to work. *Id*. On May 11, 2015, the EPRB heard Vess' appeal and voted three to two

---

[3] Because Rock was a salaried employee, he was ineligible to appeal. Doc. #59-2 at Ex. B at ¶ 20.

to uphold the termination. Doc. #59-2 at Ex. B-11. Holland's EPRB panel and Vess' EPRB panel had the same racial makeup—four African-Americans and one Caucasian. *Id*. at Ex. B at ¶ 29. Vess' panel consisted of a 47-year-old, a 71-year-old, a 57-year-old, a 49-year-old, and a 54-year-old. *Id*.

Vess was eventually replaced by Steven Hall, a 32-year-old Caucasian male. *Id*. at Ex. B at ¶ 30.

# IV
## Discussion

Vess alleges that he was terminated in retaliation for taking leave under the FMLA and was subjected to age, race, sex, and disability discrimination in violation of the Age Discrimination in Employment Act, the Civil Rights Act of 1964, the Americans with Disabilities Act, and 42 U.S.C. § 1981. In its motion, MTD Consumer argues it is entitled to summary judgment on Vess' claims because the undisputed facts show Vess cannot demonstrate that its decision to terminate his employment was influenced by his race, gender, age, disability, or medical leave. In response, Vess withdrew his gender discrimination and FMLA retaliation claims but argues that summary judgment should be denied on his race, age, and disability discrimination claims.

### A. Race Discrimination under Title VII and § 1981

Vess alleges discrimination based on his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Title VII, in relevant part, provides:

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). Section 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of

employment contracts. 42 U.S.C. § 1981; *see Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000) (recognizing employee can allege § 1981 claim under employment contract). The summary judgment analysis is the same for race discrimination claims under § 1981 and Title VII. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).

Claims of discrimination based on circumstantial evidence, such as the ones here, are subject to the *McDonnell Douglas* burden-shifting framework.[4] *Id.* To survive a summary judgment motion under this framework:

> the plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (internal quotation marks and citations omitted).

### 1. Prima facie case

To establish a prima facie case of discrimination, a plaintiff must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). In work-rule violation cases such as this, the fourth prong can be established by showing that the plaintiff did not violate the work rule. *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892–93 (5th Cir. 2012); *Moore v. Miss. Dep't of Human Servs.*, 6

---

[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

F.Supp.3d 713, 716 (S.D. Miss. 2014).

It is undisputed that Vess has met the first three prongs: he is a member of a protected class (Caucasian), he was qualified for the position, and his employment was terminated. Thus, whether Vess has established a prima facie case turns on the fourth prong. MTD Consumer argues that Vess "has not identified another employee outside of the protected category who was treated more favorably under nearly identical circumstances or established that a non-Caucasian employee replaced him." Doc. #60 at 13. Vess counters that he "can show that he, and all the white employees, were treated less favorably than the black employees at the facility … because only white employees were disciplined for saying the N-word or making racial slurs, and black employees were not." Doc. #61 at 16–17. Vess further argues that he can "satisfy a prima facie [case] by showing that he did not violate the work rule that a defendant claims he violated." *Id.*

### a. African-Americans' use of racial slurs

Vess contends that it is common to hear African-American employees at MTD Consumer use the "N-word" but, to his knowledge, no such employees have been disciplined. Doc. #61 at 7–9, 16. In that regard, Vess argues that "[t]here was a double standard concerning discipline for alleged racial slurs between white and black employees." *Id*. at 16. In support of his argument, it appears that Vess proffers as comparators Tommy White, "two black females," and Caron Ewing. *Id*. at 7–10. MTD Consumer replies that while "Vess claims MTD did not terminate black employees for using the N-word at work, [he] fails to present any evidence that MTD received complaints about the use of the N-word by any black employee, much less a black employee in a position of leadership." Doc. #64 at 2.

Whether Vess has established a prima facie case of racial discrimination hinges on whether the alleged comparators are similarly situated to him. As a general rule, employees are not

similarly situated if they work under different supervisors, work for different divisions of a company, have different work responsibilities, or were the subject of adverse employment actions remote in time from that taken against the plaintiff. *Lee*, 574 F.3d at 259–60. "This is because [the Fifth Circuit] require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Id.* at 260 (internal quotation marks omitted).

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* (internal quotation marks omitted).

### i. Tommy White

Regarding White, Vess points to Walter Rock's testimony that Rock heard White use the "N-word." Doc. #61 at 8; *see* Doc. #62-8 at 18–19. Vess does not argue, nor does he present any evidence to suggest, that he and White were similarly situated employees or that any employment actions which took place were under nearly identical circumstances. From the record, the Court can glean that Vess and White both worked in the welding department. *See* Doc. #62-9 at 4; Doc. #59-2 at Ex. B at ¶ 9. However, it is unclear whether Vess and White held the same duties and responsibilities. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal citations and quotation marks omitted). More important, Vess does not offer any evidence to show that White was ever reported

for use of the "N-word." As such, the Court finds that White is an inappropriate comparator. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 901 (5th Cir. 2002) (conduct of another senior manager whose management style was subject of similar complaints not comparable to discharged senior manager's conduct because no formal complaint was ever filed against non-discharged senior manager).

### ii. "Two black females"

Vess next points to Rock's testimony that two unidentified African-American females used the "N-word" when fighting one another but were only written up for fighting, not for using the "N-Word." Doc. #61 at 8; *see* Doc. #62-8 at 19–20. Vess has presented nothing about these persons upon which the Court can conclude that they and Vess were similarly situated employees or that their circumstances were nearly identical. Additionally, as with White, Vess has presented no evidence to show that these persons were ever reported for their use of the "N-word" during the fight. To the contrary, Rock testified that it was he and Cherry who disciplined them, Doc. #62-8 at 19–20; therefore, he could have taken disciplinary actions against them for their use of the word. Considering the lack of information presented, the Court finds that the "two black females" are not appropriate comparators.

### iii. Caron Ewing

As mentioned above, Vess recalls Ewing saying that "he ain't no man. He's a white man. They ain't never made a good white man" while she was instigating a fight between him and Blaq. Doc. #62-1 at 91. Vess argues that although Hancock considered this a racial slur, no investigation was conducted, and Ewing was not fired. Doc. #61 at 16. In reply, MTD Consumer argues that Vess and Ewing are not similarly situated employees because Vess was a supervisory employee who was held to a higher standard than the employees he supervised. Doc. #64 at 3. MTD

Consumer also argues that while it does not have any information that the comment was made or that Vess reported it to a member of management, "the statement 'no white good men' on one occasion is not nearly identical to the corroborated complaint against Vess that he used the N-word on multiple occasions in the workplace." *Id*. at 2–3.

In his response to the motion for summary judgment, Vess does not argue that he and Ewing are similarly situated employees; rather he simply describes the alleged difference in treatment. According to the record, however, Ewing worked as a robot operator. Doc. #62-8 at 16. In contrast, Vess worked as a robot technician and held a position of leadership. *Id*. at 7; Doc. #62-1 at 57. While the record is unclear as to whether Ewing and Vess held the same duties and responsibilities, Vess admits that as a lead operator he was held to a higher standard of conduct and behavior than the employees he supervised.[5] Doc. #62-1 at 57.

The Fifth Circuit has stated that "distinction in position and supervision has been held sufficient to establish that two persons are not similarly situated." *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008). Further, the record reflects that the behavior of Ewing and Vess was reported to two different supervisors—Vess reported Ewing's behavior to Hancock, and Hamblin reported Vess' behavior to Cherry. "Where different decision makers or supervisors are involved, their decisions are rarely 'similarly situated' in relevant ways for establishing a *prima facie* case." *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 857 (S.D. Tex. 2010). Accordingly, as there is nothing to suggest this case is rare in that regard, Ewing is not an appropriate comparator.

In sum, Vess' proffered evidence is insufficient to support a reasonable juror's finding that

---

[5] Citing Vess' deposition testimony, MTD Consumer asserts that Ewing was not in a position of leadership. Doc. #64 at 3. However, based on Vess' testimony, it is unclear what Vess' testimony was in that regard. *See* Doc. #62-1 at 126 (Vess responded, "No" to question, "And [Ewing] is not in any position of leadership; is that correct?"). Nonetheless, Vess does not attempt to argue that Ewing was in a position of leadership, nor does he present any evidence to suggest she was.

he was treated differently than similarly situated African-American employees under nearly identical circumstances. Vess has thus failed to establish a prima facie case on this basis.

### b. Work-rule violation

According to MTD Consumer, it terminated Vess for violating its non-harassment policy by using the "N-Word." Vess argues that he did not violate MTD Consumer's non-harassment policy. While Vess admits he used the term "N-rigged" on one occasion several years before his termination, he argues the term was not a racial slur or harassment because it was not directed to a person or class of persons but towards a machine. Doc. #61 at 6, 17.

In a work-rule violation case, a Title VII plaintiff may establish a prima facie case by showing that he did not violate the rule. District courts in the Fifth Circuit are split on whether a simple, self-serving denial, as Vess presents, is sufficient to establish a prima facie case. *Harkness v. Bauhaus U.S.A., Inc.*, 86 F.Supp.3d 544, 556 (N.D. Miss. 2015) (collecting cases). In recognition of this split, recent decisions have assumed without deciding that mere denials satisfy a plaintiff's prima facie burden. *Id.* Accordingly, the Court assumes that Vess' denial is sufficient to establish a prima facie case under the work-rule violation doctrine.

### 2. Legitimate, non-discriminatory reasons

The second step in the *McDonnell Douglas* framework requires MTD Consumer to put forth a legitimate, non-discriminatory reason for terminating Vess. For a reason to be legitimate and non-discriminatory, the defendant is not required to "persuade the court that it was actually motivated by the proffered reasons" but must "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." *Turner*, 675 F.3d at 900 (alteration in original).

MTD Consumer has offered evidence, in the form of deposition testimony, declarations,

and work files, that it terminated Vess because HR received a formal complaint about Vess' use of racial slurs, which was corroborated upon investigation. The Court concludes that this evidence would allow the trier of fact to rationally conclude that Vess' termination was not motivated by discriminatory animus. MTD Consumer therefore has satisfied its burden under *McDonnell-Douglas* to proffer a legitimate non-discriminatory reason for its termination of Vess.[6]

### 3. Pretext

"If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Wong v. Lighthouse Point, LLC*, No. 4:16-cv-109, 2017 WL 6028356, at *8 (N.D. Miss. Dec. 5, 2017) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alterations omitted). Practically, "the employee must produce or rely on evidence that the employer's legitimate, nondiscriminatory reason was only a *pretext*—that is, a false or weak reason advanced to hide the actual reason." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236–37 (5th Cir. 2016) (quotation marks and alterations omitted).

Vess argues there is a genuine issue of material fact as to pretext based on evidence that (1) he was a good employee, (2) Ewing only received a verbal warning for sexually harassing him, (3) he only made a "one-time verbal slip," (4) only white males have been terminated for using the N-word, (5) African-Americans used the "N-word" and never received any disciplinary action, and (6) Ewing was not disciplined for using a racial slur. Doc. #61 at 19–20. Vess also argues that "even if this Court concludes there is an indicia of truth in the proffered reason for [his]

---

[6] Vess does not dispute that MTD Consumer has offered a legitimate, non-discriminatory reason.

termination, a reasonable jury could conclude that his race was a motivating factor, for all the reasons above." *Id.* at 21.

### a. Good employee

Vess first contends that MTD Consumer's reason for terminating him is pretext because he "worked at MTD for around fifteen (15) years and was a good employee." Doc. #61 at 19. However, Vess' quality as an employee is irrelevant to the pretext inquiry because he was not terminated due to his work performance. Even if his job performance was the reason for termination, his conclusory assertion that he was a good employee would not save him from summary judgment. *Evans v. Tex. Dep't of Transp.*, 547 F.Supp.2d 626, 647 (E.D. Tex. 2007) ("[A]n employee cannot survive summary judgment merely because [he] disagrees with the employer's assessment of [his] performance.").

### b. Ewing's sexual harassment

Vess next contends that MTD Consumer's reason for terminating him is pretext because Ewing received only a verbal warning when he reported her for sexual harassment. As explained above, Vess fails to argue or present sufficient evidence to establish that he and Ewing are similarly situated employees. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (applying similarly-situated requirement at pretext stage); *see also Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012) ("At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.") (internal quotation marks omitted). This argument is therefore insufficient to establish pretext.

### c. "Verbal slip"

Vess also contends that MTD Consumer's reason for terminating him is pretext because he only made a one-time verbal slip when he used the term "N-rigged" and that this occurred several

years before his termination. Doc. #61 at 19. In that regard, Vess argues that he apologized, the incident was not reported, and that he did not believe it was a racist comment or that it violated MTD Consumer's non-harassment policy. *Id.*

Vess essentially disputes Hamblin's assertion that he heard Vess use the "N-word" on occasions shortly before Vess went on leave and before MTD Consumer's findings during its investigation. "[S]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Wiseman v. New Breed Logistics, Inc.*, 72 F.Supp.3d 672, 683 (N.D. Miss. 2014) (citing *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 391 (5th Cir. 2007)) (internal alteration omitted); *see Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 366–67 (5th Cir. 2014) ("Key inquiry is … whether [plaintiff's] supervisor believed that [his] actions violated procedure, not whether those actions actually violated such a policy."). Thus, this pretext argument is insufficient to preclude summary judgment.

### d. African-Americans use of "N-word"

Vess reasserts his argument that although African-Americans used the "N-word" regularly, only white males were disciplined for using it. Doc. #61 at 19–20. In support of his argument, Vess asserts that White, "two black women," and his accuser Hamblin, used the "N-word" at work. As it relates to White and the two unidentified women, the Court has already found that Vess failed to present sufficient evidence that he is similarly situated to them or that the actions compared are "nearly identical." *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091–92 (5th Cir. 1995) (rejecting reassertion of argument "that white employees are treated differently" in pretext stage after finding in prima facie stage that plaintiff "has not offered evidence sufficient to support a finding that white employees in circumstances 'nearly identical' to his have been treated differently").

Finally, Hamblin's treatment may not raise an issue of pretext because Hamblin is within Vess' protected class (Caucasian) and "[t]o raise an inference of discrimination, [Vess] … must demonstrate that employees *outside* [his] protected class received preferential treatment …." *Floyd v. Commc'ns Workers of Am.*, 532 F.Supp.2d 816, 825 (S.D. Miss. 2006) (emphasis added). Thus, the Court finds that this argument is also insufficient to establish pretext.

### e. Ewing's racial slur

Vess argues that MTD Consumer's reason for terminating him is pretext because it treated Ewing differently when he reported her for making a racial slur towards him. Because Vess and Ewing are not similarly situated employees, this argument is no more helpful or persuasive in rebutting MTD Consumer's nondiscriminatory explanation than it was in the prima facie stage of the claim.

### 4. Summary

Vess has not carried his burden to show that MTD Consumer's disciplinary actions and decision to terminate his employment were because of his race, or that his race was a motivating factor. Accordingly, summary judgment must be granted on Vess' race discrimination claim.

### B. Age Discrimination under ADEA

The Age Discrimination in Employment Act ("ADEA") provides, in relevant part, that "[i]t shall be unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish an ADEA claim, a "plaintiff must prove by a preponderance of the evidence … that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). "But-for cause" means "the cause without which the event could not have occurred." Black's Law

Dictionary (10th ed. 2014); *see Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013).

In analyzing age discrimination claims, the Fifth Circuit applies the *McDonnell Douglas* burden-shifting framework. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). The parties do not dispute that Vess has established a prima facie case of age discrimination[7] or that MTD Consumer has set forth a legitimate, nondiscriminatory reason for terminating Vess. Rather, Vess' age discrimination claim turns on whether MTD Consumer's proffered legitimate, nondiscriminatory reason for terminating Vess is pretext.

MTD Consumer argues that Vess has "identified no evidence to support his contention that his termination had anything to do with age" and therefore cannot rebut its legitimate, non-discriminatory reasons for his termination, or otherwise establish that, but for his age, he would not have been terminated. Doc. #60 at 22–24. In response, Vess reasserts the same pretext arguments he made in his race discrimination claim, adding only that his age and health were factors in his termination because he could no longer work 60-70 hours a week. Doc. #61 at 23–24.

### 1. Good employee

As with his race discrimination claim, Vess' argument that he was a good employee is without merit because he was not terminated because of his work performance.

### 2. "Verbal slip"

Also similar to his race discrimination claim, Vess' self-serving statement that he did not use the "N-word" in violation of the company's policy does not create a triable issue of fact as to whether MTD Consumer terminated him *because of* his age. Thus, this pretext argument is insufficient to preclude summary judgment.

---

[7] MTD Consumer "assumes without admitting that Vess can make out a prima facie case." *See* Doc. #60 at 22 n.12.

### 3.  Treatment of Ewing

Vess reasserts his argument that MTD Consumer's reason for terminating him is pretext because it treated Ewing differently when he reported her for sexual harassment and for making a racial slur towards him.   As already established, Vess fails to present sufficient evidence to create a genuine issue of material fact that he and Ewing are similarly situated employees.   Most important, Vess has presented no evidence of Ewing's age for the Court to even consider that Ewing was treated differently because she was younger than him.   *See Fife v. Vicksburg Healthcare, LLC*, 945 F.Supp.2d 721, 733 (S.D. Miss. 2013) ("[Defendant's] retention of individuals within Plaintiff's protected class who were charged with essentially the same misconduct as the Plaintiff tends to negate any inference that Plaintiff's termination was based on age.").   Vess' pretext argument is insufficient to preclude summary judgment.

### 4.  African-Americans' use of "N-word"

Vess reasserts his argument that MTD Consumer's reason for terminating him is pretext because White, "two black females," Hamblin, and African-Americans in general used the "N-word" but were not terminated because of it.   The Court has already found that there is insufficient evidence to suggest that Vess and these persons are similarly situated employees.   Overall, Vess has failed to present evidence to suggest that age was a factor in the difference in treatment between him and African-Americans or Hamblin.   This pretext argument is also insufficient to preclude summary judgment.

### 5.  Ability to work long hours

Finally, Vess argues that MTD Consumer's reason for terminating him is pretext for age discrimination "because he could no longer work 60-70 hours a week."  Doc. #61 at 24.  However, Vess has placed no evidence in the record that MTD Consumer complained about him no longer

being able to work 60-70 hours a week or that it made any type of comments to suggest that his age was an issue. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993) (subjective belief that age discrimination was basis of discharge insufficient to make issue for jury when employer articulates adequate nondiscriminatory reason); *Eugene v. Rumsfeld*, 168 F.Supp.2d 655, 677 (S.D. Tex. 2001) ("[P]laintiff's assertion of pretext must be substantiated by more than self-serving, subjective, or speculative allegations; a plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext."). Therefore, this pretext argument is also insufficient to preclude summary judgment.

### 6.  Summary

Beyond Vess' speculation and subjective belief, there is no evidence in the record to establish, or raise a genuine issue of material fact, that MTD Consumer discriminated against Vess because of his age. Vess therefore has failed to establish that MTD Consumer's reason for terminating him was pretext for intentional age discrimination and that his age was the "but for" cause of his termination. Accordingly, summary judgment will be granted on Vess' age discrimination claim.

### C.  Disability Discrimination

The Americans with Disabilities Act ("ADA") provides, in relevant part, that no employer covered by the Act "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prove discrimination under the ADA, an employee may either present direct evidence that he was discriminated against because of his disability or, alternatively, proceed under the *McDonnell Douglas* burden-shifting framework. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d

688, 694 (5th Cir. 2014).

In this case, there is no direct evidence; therefore, Vess must first establish a prima facie case of discrimination.  To establish a prima facie claim under the ADA, Vess must show "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."  *Id.* at 697 (brackets omitted).  MTD Consumer, challenging Vess' disability discrimination claim on the first and third elements, argues Vess cannot establish that he suffers from a disability or that MTD Consumer terminated him because of any disability.  Doc. #60 at 25.

### 1.  Disability

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment …."  42 U.S.C. § 12102(1).  Vess argues that although he is not totally disabled, he suffers from the impairment of anxiety that interferes with his ability to concentrate, interact with other people, and work; therefore he has a disability under the first prong.  Doc. #61 at 27–28.  The Court then must "determine first whether [Vess] has an 'impairment,' next whether the activity on which he relies is a 'major life activity,' and, if so, whether his impairment 'substantially limits' that major life activity."  *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003).

### a.  Impairment

In 2008, Congress enacted the ADA Amendments Act ("ADAAA") which provides that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms …."  42 U.S.C. § 12102(4)(A).  Regarding whether or not an impairment "substantially limits" a major life activity, the ADAAA "directs that

'substantially limits' should not be as strictly construed as some courts have required in the past and should not require 'extensive analysis.'" *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F.Supp.2d 528, 538 (S.D. Tex. 2011) (citing ADA Amendments Act of 2008, § 2(b)(5)). However, "[a]lthough the text of the ADAAA expresses Congress's intention to broaden the definition and coverage of the term 'disability,' it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013). "Even under the ADA as amended by the ADAAA, to prevail on a claim of disability discrimination under the ADA, a party must prove that … *he has a disability*." *Id*. (alterations and internal quotation marks omitted).

The EEOC defines an impairment as "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Accordingly, courts have recognized that an anxiety disorder qualifies as an impairment. *See Cody v. Cty. of Nassau*, 577 F.Supp.2d 623, 638 (E.D.N.Y. 2008) (recognizing generalized anxiety disorder as impairment under ADA). As such, the Court finds that Vess' anxiety, as established by the record, satisfies the definition of impairment.

### b. *Substantial limitation of major life activity*

Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Vess claims that his anxiety substantially limits his abilities to concentrate, interact with other people, and work generally.

MTD Consumer argues that "Vess' own testimony precludes a finding that he was

substantially limited in a major life activity [because he] failed to identify anything he could not do … except for enter a McDonald's drive-thru." Doc. #60 a 26; *see* Doc. #59-1 at 142. In his response, Vess focuses mostly on his condition of anxiety but gives little attention to showing how his anxiety substantially limits a major life activity. Vess points to Rock's testimony that Vess would get "sickly upset" and could not concentrate on work. Doc. #61 at 28. Vess also presents a "Certification of Health Care Provider" form[8] on which Dr. Sharon Mitchell states that the "probable duration of [Vess'] condition" is "chronic" and that he was "referred for psych counseling." Doc. #62-21. On the form, Dr. Mitchell checked "yes" to the question, "Is the employee unable to perform any of his/her job functions due to the condition." *Id.* Considering the evidence in the light most favorable to Vess, the Court finds that Vess could not concentrate at work and lacked the ability to perform some of his job functions. This is sufficient to establish that Vess' anxiety substantially limited his ability to work and concentrate. Therefore, Vess has satisfied the first prong of his prima facie case—a disability.

### 2. Adverse employment decision on account of disability

With respect to the third element—whether Vess suffered an adverse employment action because of his disability—MTD Consumer argues that (1) Vess cannot show he was terminated on account of his alleged disability because MTD Consumer terminated two other employees for the same reason as Vess (work-place rule violation), and Vess has presented no evidence that either of the other employees suffered from a disability; (2) "Vess has offered no other evidence of disability discrimination aside from his own self-serving belief that his health factored in his termination;" and (3) Vess has not shown his health actually played a role in his termination. Doc.

---

[8] Vess asserts that he took FMLA medical leave in February 2015 and that the Certification of Health Care Provider form was used in support of his request. Doc. #61 at 28. However, the Certification is dated March 19, 2015, and includes a March 2015 date as when Vess was treated for his condition. Doc. #62-21. It therefore is unclear how this document was used to support Vess' request for medical leave.

#60 at 26; Doc. #64 at 8.

The Court agrees with MTD Consumer on all points. There is nothing in the record to suggest that MTD Consumer terminated Vess because of his disability. *Peterson v. Next Prod., LLC*, No. 16-14882, 2017 WL 3594336, at *4 (E.D. La. Aug. 21, 2017) ("Subjective, self-serving beliefs regarding discrimination, without more, is insufficient to withstand summary judgment."). Vess argues, however, that he was terminated the day he returned to work after taking off because of his anxiety and that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Doc. #61 at 28 (*citing Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Vess' argument, however, is without merit, as he has not asserted a retaliation claim under the ADA.

Because Vess has failed to proffer sufficient evidence to establish a prima facie case of disability discrimination, summary judgment on his disability discrimination claim is warranted.

**V**
**Conclusion**

For the reasons above, MTD Consumer's motion for summary judgment [59] is **GRANTED**. Accordingly, the pending motions that remain [42][66][68][70][72][74][76] are **DENIED as moot**. A final judgment consistent with this opinion will issue separately.

**SO ORDERED**, this 16th day of February, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**